UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.

JEAN RONY SIMON, individually, WINNIE
SYLVIE ANIS, individually, and CLARK L.
MARCUS, individually,

  Plaintiffs

v.

TRADING CORE INVESTMENT, LLC., a
Georgia Limited Liability Company,

  Defendant.
_____/

## COMPLAINT FOR DAMAGES AND OTHER RELIEF

The Plaintiffs, Jean Rony Simon, individually, Winnie Sylvie Anis, individually, and Clark L. Marcus, individually, (jointly the "Simon Group") sue Trading Core Investments, LLC, a Georgia limited liability company ("Trading Core"), for damages and other relief, and further state:

### ALLEGATIONS COMMON TO ALL COUNTS

#### A. The Parties, Jurisdiction and Venue

1. <u>Jean Rony Simon</u>: Jean Rony Simon is an individual residing in Miami-Dade County, Florida, and is *sui juris*.

2. <u>Winnie Sylvie Anis</u>: Winnie Sylvie Anis is an individual residing in Miami-Dade County, Florida and is *sui juris*.

3. <u>Clark L. Marcus</u>: Clark L Marcus in an individual residing in the State of Connecticut and is *sui juris*.



4. <u>Trading Core</u>: Trading Core Investment, LLC is a Georgia limited liability company, is an individual residing in Broward County, Florida and is otherwise *sui juris*.

5. <u>Jurisdiction</u>: Jurisdiction is proper in this Court under 28 U.S.C. §1332 as there is diversity of citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars, exclusive of court costs, interest, and attorneys' fees.

6. <u>Venue</u>: Venue is proper herein under 28 U.S.C. §1391 as a substantial part of the events or omissions occurred herein, as Trading Core solicited the Joint Venture's investment from this venue.

7. <u>Conditions Precedent</u>: All conditions precedent to the bringing of this action occurred or were waived.

### B. The Joint Venture Investment With Trading Core

8. <u>Edou Pollus Promotes Investment with Trading Core</u>: An acquaintance of the Simon Group, Edou Pollus, encouraged investment with jointly with him to invest with Trading Core. [1]

9. <u>The Joint Venture Agreement</u>: On April 16, 2021, the Simon Group entered into a Joint Venture Agreement with Pollus (hereinafter the "Joint Venture") where the parties were to pool their funds and invest in a trading platform, with the company identified as Trading Core Investment, LLC. (Ex. A).

10. <u>Terms of the Joint Venture</u>: The Simon Group and Pollus agreed to equally invest in a trading platform, with both the Simon Group and Pollus contributing $250,000.00 each for a total of $500,000.00 and appointed Pollus as manager of the Joint Venture.

---

[1] The Simon Group is separately seeking relief against Mr. Pollus and his wife Guerline, in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, Florida.

2



11. <u>Trading Core's Representations to the Joint Venture</u>: Trading Core represented to the Joint Venture that its trading Platform operated as follows:

The Platform order's instruments every Thursday from the provider.

> 500K Secures A 10M Leased Instrument minimum
> 1-      The Instrument Gets Monetized @ 50% Or 5M And Generates A Minimum Of 30% Per Month Or 300K Guaranteed, actual returns may be much higher, but only the stated amount is guarantee.
> 2-      The Cost Of The Instrument 12% Of Face Value Is Paid Back Out Of Profits For The Trade.
> 3-      This Is A Highly Regulated FED Trade Which Is Why There Is A Minimum Guarantee Built Into The Contract
> 4-      It takes 10 working days to get the instrument and an additional 10 working days to get the instrument shifted to the trade desk , monetized, and put into trade.
> 5-      Once The Instrument Is Monetized The Trade Begins And The Client's Investment Is Returned.
> 6-      Fees are 10% on the platform and do not cover your side. Your fees are between you and your client.
> (Ex B)

12. <u>The Simon Group Performs its Obligations Under the Joint Venture</u>: As required in the Joint Venture, the Simon Group contributed its portion, wiring the funds directly to the Trading Core Group on April 16, 2021. (Ex C) The Simon Group is without knowledge whether Edou Pollus ever made his investment, but based upon conversations with Trading Core's representatives, believes that Edou Pollus never completed his investment.

13. <u>Trading Core Confirms Receipt, Representations</u>:  In a series of telephone conversations, Trading Core's representatives confirmed receipt of the Simon Group's funds and confirmed the investment with Trading Core in its 'trading platform'.

14. <u>Trading Core Failed to Perform</u>: After six months, Trading Core never returned the Joint Venture's investment.



*Jean Rony Simon, et.al., v. Trading Core Investment, LLC*
Complaint

15. <u>Trading Core Admits it has Not Performed</u>: When the Simon Group demanded return of its investment, Trading Core's representatives claimed that the transaction had not 'closed'.

16. <u>Simon Group Demands Return of Its Funds</u>: The Simon Group demanded return of its funds, together with the "Profits for the Trade."

17. <u>Simon Group Removes Pollus From Management</u>: On October 26, 2021 the Simon Group removed Pollus as the manager under the Joint Venture for failure to return of the Simon Group's initial investment. (Ex D). In removing Pollus, the Simon Group demanded all records relating to the Trading Core Group, including all communications with the Trading Core Group and confirmation of Pollus' investment. Pollus refused to deliver the business records of the Joint Venture.

18. <u>Trading Core Fails to Return the Simon Group's Funds</u>: Having removed Pollus from management of the Joint Venture, the Simon Group demanded an accounting from Trading Core. None was produced, yet Trading Core represented the funds would be returned within the week. Despite its representatives' representations that trades will be occurring on Friday, October 21, and upon occurrence of the 'trade, all of the principal investment will be returned that did not occur and Trading Core failed to return the funds.

## Count I: Unjust Enrichment

19. <u>Adoption of Prior Allegations</u>: The Simon Group adopts and realleges the allegations in paragraphs 1 through 18 as if fully set forth herein.

20. <u>Statement of Claim</u>: The Simon Group sues Trading Core as it wrongly retains the Simon Group's investment and refuses to return the investment or the 'guaranteed' return' in excess of the jurisdictional requirements of this Court.

4



100 N.E. Third Avenue, Suite 280, Ft. Lauderdale, FL 33301
Phone/ 954 522 3636   Fax/ 954 331 2505

21. <u>Conferral of Benefit</u>: On April 16, 2021, the Simon Group conferred a benefit upon Trading Core, wiring $250,000.00 for investment in its trade platform.

22. <u>Knowledge of Benefit</u>: Trading Core had knowledge of its receipt of the wire and never denied receipt of the funds.

23. <u>Unjust for Retention</u>: The circumstances are such that it would be inequitable for Trading Core to retain the benefit of the wire transfer without returning the funds.

Wherefore, the Simon Group demands judgment against Trading Core, prejudgment interest, court costs, and attorneys' fees, together with all further such relief as this Court may deem appropriate.

## Count II: Breach of Trading Core Manager Agreement

24. <u>Adoption of Prior Allegations</u>: The Simon Group adopts and realleges the allegations in paragraphs 1 through 18 as if fully set forth herein.

25. <u>Statement of Claim</u>: The Simon Group sues Trading Core for breach of its "Trading Manager Agreement" as Trading Core entered into its Trading Manager Agreement with the Joint Venture, but failed to perform its terms and conditions and the 'guaranteed' return' in excess of the jurisdictional requirements of this Court.

26. <u>Contract</u>: Edou Pollus represented to the Simon Group that the Joint Venture entered into a Trading Manager Agreement similar to Ex. C.

27. <u>Breach</u>: Trading Core breached the Trading Manager Agreement by:

    a.    Timely perform the investment into the Leased Instrument;

    b.    Return the Client's investment upon monetization; and

    c.    Distribute the profits from the instrument.



*Jean Rony Simon, et.al., v. Trading Core Investment, LLC*
Complaint

28.     Causation: But for Trading Core's breach of its Trading Manager Agreement, the Simon Group would not have been damaged.

29.     Damages: The Simon Group suffered damages in excess of its initial investment of $250,000.00, the performance of the investment under the Trading Manager Agreement, and other damages.

WHEREFORE, The Simon Group demands judgment for damages against Trading Core, court costs, prejudgment interest, and any further such relief this Court may deem appropriate.

**KATZ BARRON**
*Attorneys for PLAINTIFFS*
100 N.E. Third Avenue, #280
Fort Lauderdale, FL   33301
Telephone: (954) 522-3636
Facsimile: (954) 331-2505
Primary E-mail: ktg@katzbarron.com
Secondary E-mail: sml@katzbarron.com
miaefile@katzbarron.com

By: */s/ Keith T. Grumer*
         KEITH T. GRUMER
         Florida Bar No. 504416



## JOINT VENTURE AGREEMENT

This Joint Venture Agreement is made this 16᷾ᵗʰ day of April, 2021, by and between Jean Rony Simon, Winne Sylvie Anis and Clark L. Marcus (jointly as "The Simon Group") and Ed Pollus (Ed) and further state:

### RECITALS

WHEREAS, Ed has an investment opportunity with a trading platform (the "Trading Platform Investment"):

WHEREAS, the minimum investment requirement is Five Hundred Thousand Dollars [$500,000.00];

WHEREAS, the Trading Platform Investment guarantees two distributions: the first distribution shall occur in ninety (90) days from the date of the initial investment and shall be return of the principal in the amount of $500,000.00, and the second distribution shall occur one hundred eighty (180) days from the initial investment and shall be the profit distribution of $1,000,000.00;

WHEREAS, Ed does not have the requisite minimum investment and asked the Simon Group to participate with him in the Trading Platform Investment;

WHEREAS, the Simon Group is prepared to participate with Ed equally, with both parties contributing Two Hundred Fifty Thousand Dollars[$250,000.00];

WHEREAS, to assure the Simon Group's participation, Ed is assuring the Simon Group of the Trading Platform Investment's legitimacy and is prepared to guaranty their principal investment and has the ability to secure their investment; and

WHEREAS, the parties wish to participate in the Trading Platform Investment as joint parties,

**NOW THEREFORE**, in consideration of the mutual promises, representations and warranties as set forth herein and for other good and valuable consideration, receipt of which is hereby acknowledged, it is hereby agreed as follows:

### I. Joint Obligations

1.1 Recitals: The Recitals above are true and correct and are incorporated herein.

1.2 Joint Investment: The Simon Group and Ed shall equally invest in the Trading Platform Investment. The Simon Group and Ed shall equally share in the profits, any and all expenses, and any and losses.

1.3 Non-Assignable Partnership: As equal partners with joint responsibilities to each other, no interest in this Agreement may be assigned, transferred, pledged or hypothecated without the other party's written consent.

1.4 Management: Ed is authorized to manage the Trading Platform Investment under this Agreement. Ed shall be responsible for all direct contact with the Trading Platform Investment. Ed



Scanned with CamScanner

shall be in full and complete control of the Trading Platform Investment unless removed upon the Simon Group's showing of misconduct or malfeasance.

1.5 <u>Removal For Failure to Turn Over Monthly Installments or Return of Capital</u>: Ed shall be responsible to disburse, within three business days, each monthly payment from the Trading Platform Investment and to disburse the return of the Simon Group's principal. Failure to do so shall be grounds for the immediate removal of Ed as manager of the Agreement. In the event of Ed's removal, the Simon Group may assume all management responsibilities. The Simon Group, if it be necessary, shall have the ability to equalize any disparity in distributions, and may prioritize return of its principal to the Simon Group over Ed.

1.6 <u>Future Cooperation</u>: The Parties agree to cooperate in the signing of any and all documents needed for tax reporting, corporate governance, or relevant to the successful completion of the Trading Group Investment.

## II ED's Covenants

2.1 <u>Authority</u>: Ed has full and complete authority to enter into this Agreement.

2.2 <u>Fiduciary Responsibility</u>: Ed is a fiduciary and shall be responsible for reporting to the Simon Group, on a monthly basis, the performance of the Trading Platform Investment. Ed shall maintain all records under this Agreement, and will make all records available to the Simon Group on a monthly basis.

2.3 <u>Pledge of Security</u>: Ed shall pledge his assets to secure the safe return of the Simon Group's investment into this Agreement.

2.4 <u>No Commission</u>: Ed represents and warrants that he has not received, nor has he been promised a commission for bringing the Simon Group to the Trading Platform Investment. Ed agrees that his sole compensation shall be from his share of the Trading Platform Investment Performance.

2.5 <u>Financial Disclosure</u>: Ed shall provide full and truthful financial disclosure confirming his ability to perform the guaranty of The Simon Group investment. The financial disclosure, together with two years' tax returns, shall be maintained confidentially by The Simon Group. In the event of a default by the Trading Platform Investment, The Simon Group may use the information contained in the Financial Disclosures to secure return of The Simon Group's Investment.

[Handwritten margin note: PROPERTY 5160 South University Dr DAVIE FL 33328]

2.6 <u>Personal Guaranty</u>: Ed absolutely, unconditionally, and irrevocably guarantees to The Simon Group its initial principal investment of $250,000.00, regardless of the cause of default by the Trading Platform Investment or any other event which impairs The Simon Group's initial investment. This Guaranty shall be absolute, continuing and unlimited. The Guarantor shall, on demand, pay all amounts at any time in arrears, and will make good any and all defaults by the Investment Trading Platform including but not limited to attorneys' fees and costs incurred by The



Simon Group before, during or after trial (including appeals) in connection with the enforcement of this Guaranty, whether or not suit is brought.

### III The Simon Group's Covenants

3.1 <u>Authority</u>: The Simon Group has full and complete Authority to enter into this Agreement.

3.2 <u>Respect of Ed's Management</u>: For so long as Ed faithfully performs his duties, making timely disbursements, and forwarding all reports and notices from the Trading Platform Investment, the Simon Group shall not interfere with Ed's management and communications with the Trading Platform Investment.

### IV. Miscellaneous Provisions

4.1 <u>Notice</u>. Any notice required under this Agreement shall be in writing, may be sent via hand delivery, overnight delivery, or by facsimile, and shall be deemed delivered upon sending when sent to the following addresses or fax numbers, or subsequent addresses and numbers, if supplied in writing:

To: The Simon Group:

Phone: ( ) _____ ; Fax:

With a copy to:
Keith T. Grumer, Esq.,
Katz Barron
100 NE 3rd Ave, Suite 280
Fort Lauderdale, FL 33301
ktg@katzbarron.com
Direct  954-331-2509
Cell     954-303-3000

To Ed:

4.2 <u>Headings</u>. Any section and subsection headings in this Agreement are for convenience of reference only, and shall not govern or influence in any manner whatsoever the interpretation of any provision hereof.

4.3 <u>Severability</u>. The invalidity, illegality or unenforceability of any provision of this Agreement, pursuant to judicial decree or otherwise, shall not affect the validity or enforceability of any other provision of this Agreement, each of which shall remain in full force and effect.

4.4 <u>Waiver</u>. No failure of any Party to exercise any power given hereunder, or to insist upon strict compliance with any of the terms or conditions herein, shall waive such Party's right to demand exact compliance with the terms hereof.

4.5 <u>Non-Assignable</u>: This Agreement is not assignable, but in the event of an approved



Scanned with CamScanner

assignment, this Agreement shall bind the successors, assigns or personal representatives of the Parties.

4.6 Entire Agreement. This Agreement is the Parties' expression of their agreement about the subject matter hereof is a complete and exclusive statement of the terms and conditions thereof. This Agreement supersedes and replaces all prior negotiations and agreements between the Parties, or any of them, whether written or oral, about the matters covered in the Agreement herein.

4.7 No Oral Modification: Any provision hereof may be changed, waived or terminated, only by written instrument signed by the Party against whom the change, waiver or termination is to be enforced.

4.8 Representation by Counsel. Each Party acknowledges that they were represented by counsel throughout the negotiations and discussions preceding this Amendment's execution, and that they executed this Agreement after having had this Agreement and its legal effect explained to them by their counsel.

4.9 No Other Agreements: Each Party agrees that no other Party, or agent or attorney of any other Party, made any promise, representation, or warranty whatsoever, express or implied, not contained herein about the subject matter hereof, to induce any other Party to execute this Agreement or any other document referred to herein, and each Party agrees it has not executed this Agreement or such other documents relying on any such promise, representation, or warranty not contained herein.

4.10    No Duress: Each Party further agrees that they are not executing this Agreement under duress or coercion, and they are each executing this Agreement of their own free will, believing this Agreement to be in their best interests.

4.11    Counterpart signatures: This Agreement may be executed in several counterparts. All counterparts so executed shall constitute one Agreement binding on all Parties, notwithstanding that all Parties are not signatories to the original or the same counterpart.

4.12    Rules of Construction: Each of the Parties has participated in the negotiation of this Agreement and this Agreement shall be construed in accordance with its intent and with the fair meaning of its provisions, and without regard to any presumption or other rule of interpretation requiring construction thereof against the Party who drafted the document. "If' shall mean "in the event that"; "Including" shall mean "including, without limitation"; and "may" shall mean "may, but shall not be required to".

The Parties executed this Agreement as of the date of the last signature hereto.

| The Simon Group | Ed Pollus |
|---|---|



Scanned with CamScanner

| By:_____ | By: _[signature]_____ |

Scanned with CamScanner

**Set up a wire transfer**



Set Up Another Wire

# Wire Instruction Confirmation

Thank you for your request. Your transaction is still pending..

All transactions are subject to routine review and approval before they can be released. No further action is required from you at this time. Should we require more information in order to approve the transfer, we will contact you by telephone. If we are unable to reach you, or if your transaction cannot be approved for other reasons, we will notify you.

Status: **Processed** - Confirmation Number is **20211060030678**.

**Source Account**

Account: Trust, #******7130 (Checking)

**Scheduling**

Immediately upon approval

**Destination**

Amount: $250,000.00
Beneficiary: Trading Core Investment, LLC
5 Concourse Parkway suite 3000
Atlanta GA 30328
Account: 2804065582
Bank: BANK OZK (ABA: 082907273)
Little Rock, AR

Save as Model

Set up another Wire

Trading Core Investment LLC
5 Concourse Parkway Suite 3000
Atlanta GA 30328
Ph.: 470.363.4080

# TRADING MANAGER AGREEMENT

**BETWEEN**

This Trading Manager Agreement is made and dated on _____ between;

(1) **TRADING CORE INVESTMENT LLC.** A company incorporated in the U.S whose postal address 5 Concourse Parkway suite 3000, Atlanta GA 30328 (the "**Trading Manager**").

*and*

(2) _____ a company incorporated in _____ whose postal address is _____ (the **"Client"**);

**WHEREAS**

A. The Client wishes to obtain the trading management services of The Trading Manager.

B. The Trading Manager is willing to provide such advice and services on the terms and conditions set forth in this Agreement.

C. Therefore, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound,

**IT IS MUTUALLY AGREED** as follows:

**Agreement**

1.  The Client hereby appoints The Trading Manager to be its agent. Such management will include, but shall not be limited to, selecting securities the buy/sell program, allocations of the set assets. The Company shall be authorized negotiate with the trading platform and present the best option to the client.

2.  Subject to such direction, The Trading Manager shall use its best efforts to:

    (a) select securities, securities traders, mandates, investee funds, and fund of funds; and

    (b) monitor the performance and activities of securities traders, fixed income trading advisory affiliates, mandates, investee funds, fund of funds, and other allocations utilised by the Company;

    (c) monitor and maintain the relationship between the Company and its escrow agent, custodian, administrator, prime brokers, fund of funds, registrar and transfer agent; and

    (d) provide information in connection with the preparation of all reports to the Company's shareholders.

3.  The Trading Manager shall not be required to utilise any particular allocation among external managers/traders utilised by the Company.

4.  The Trading Manager shall be available at all times, upon reasonable notice, for consultation with the Client in connection with the investments of the Company. The Trading Manager will provide monthly account statements to the Client in connection with the trading activities of the Company and transfer the earning to the client as it will be stated in the trading agreement (Weekly, Bi-weekly or monthly).

5. The Trading Manager shall for all purposes be an independent contractor and not an employee of the Company, and The Trading Manager shall have authority to act for, represent, bind or obligate the Company as specifically provided herein.

6. All investments of the Company shall at all times conform to and be in accordance with the requirements imposed by:

    (a) applicable law;

    (b) provisions of the Certificate of Incorporation, Memorandum of Association, and Articles of Association of the Company, as amended from time to time.

7. The Trading Manager is to perform professional trading services for the Company and shall be entitled to receive, for each calendar month, a performance fee (the "Performance Fee") paid monthly, on monthly profits earned on the Company's trading activities. The Performance Fee will be an amount equal to the share percentage (as stated in paragraph 1.b) owned by the Trading Manager that is equal to *1% (one percent)* of the clients earnings *unless stated otherwise*.

The Client shall be entitled to receive, for each calendar month, net profit distribution on any monthly profits earned on the Company's trading activities. The net profit distribution shall be equal to the share percentage (as stated in paragraph 1.c) owned by the Client that is equal to 99% (ninety nine percent).

In the event The Trading Manager is requested or authorized by the Company or is required by government regulation, subpoena, or other legal process to produce The Trading Manager's documents or Trading Manager's personnel as witnesses with respect to the services provided by The Trading Manager, the Company will reimburse to The Trading Manager any reasonable fees and expenses of Manager's counsel, incurred in responding to such requests.

8. The Trading Manager will be responsible for the salaries of its own employees necessary for the services provided under this Agreement, from his earnings and not from the investors capital.

9. The Trading Manager shall not be liable for any error of judgment or for any loss suffered by the Company in connection with the subject matter of this Agreement, except loss resulting from wilful misfeasance, bad faith or [gross] negligence in the performance of The Trading Manager's obligations and duties, or by reason of The Trading Manager's reckless disregard of its obligations and duties hereunder. The diclaimers set out in the Schedule to this Agreement form part of this Agreement. By signing this Agreement the Client acknowledges and accepts those disclaimers and that the Trading Manager will have no liability in respect of the matters set out therein.

The Trading Manager and its respective directors, officers and employees, agents and counsel (each, an "Indemnitee"), shall not be subject to, and the Client and the Company shall indemnify to the fullest extent permitted by law and hold each Indemnitee free and harmless from and against, any and all claims, demands, liability or expenses for any loss suffered by the Client and the Company arising out of any act or omission of an Indemnitee relating to the Client and the Company, except to the extent such act or omission constitutes wilful misconduct, or reckless disregard of the duties of The Trading Manager or on the part of the Indemnitee.

11. The Trading Manager may engage simultaneously with their investment management activities on behalf of the Company in other businesses, and may render services similar to those described in this Agreement for other individuals, companies, trusts or persons, and shall not by reason of engaging in such other businesses or rendering of services for others be deemed to be acting in conflict with the interests of the Company.

12. This Agreement shall be in full force and effect on the date of this Agreement and shall continue for a term of *12 (twelve)* months or until the termination by either party on thirty days' prior written notice. During the period between the date when notice of termination is deemed given hereunder and the effective date of termination, the rights, powers and duties of The Trading Manager shall remain in full force and effect but shall be subject to the right of the Company to direct the liquidation of any investment, which direction shall be given in writing. The Company

Trading Core Investment LLC
5 Concourse Parkway Suite 3000
Atlanta GA 30328
Ph.: 470.363.4080

represents, covenants and agrees that its decision to terminate this Agreement shall require a unanimous affirmative vote of the Company's voting class Shareholders.

13. In the event of an early termination (ten than twelve months) of this Agreement initiated by the Client, The Trading Manager shall be entitled to receive all fees and other moneys accrued due up to and including the date of such termination, and shall be entitled to a termination fee in the amount equal to *3% (three percent)* of the Company's current net asset value payable by the Company on the date of such termination (Termination fee will not apply and shall be forfeited by The Trading Manager in the event that the termination is initiated by The Trading Manager).

14. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and shall not be modified, except in writing, nor assigned by either party without the consent of the other party.

15. None of the parties to this Agreement shall, unless compelled to do so by any court of competent jurisdiction or requested by any properly constituted regulatory body, either before or after the termination of this Agreement disclose to any person not authorised by the other relevant party to receive the same, any confidential information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

16. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

17. This Agreement shall be construed and governed in accordance with the law of U.S. Disputes arising under, out of or connected with this Agreement shall be subject to the non-exclusive jurisdiction of the courts of the British Virgin Islands to which the parties hereby submit in respect of this Agreement. Wherever possible, each provision of the Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of the Agreement shall be prohibited by or invalid under any applicable law it shall only be invalid to the extent it is prohibited or invalid.

18. Program duration and minimum earnings will be:

The Platform orders instruments every Thursday from the provider.

> 500K Secures A 10M Leased Instrument minimum

1- The Instrument Gets Monetized @ 50% Or 5M And Generates A Minimum Of 30% Per Month Or 300K Guaranteed, actual returns may be much higher, but only the stated amount is guarantee.

2- The Cost Of The Instrument 12% Of Face Value Is Paid Back Out Of Profits For The Trade.

3- This Is A Highly Regulated FED Trade Which Is Why There Is A Minimum Guarantee Built Into The Contract

4- It takes 10 working days to get the instrument and an additional 10 working days to get the instrument shifted to the trade desk , monetized, and put into trade.

5- Once The Instrument Is Monetized The Trade Begins And The Client's Investment Is Returned.

6- Fees are 10% on the platform and do not cover your side. Your fees are between you and your client.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.



Trading Core Investment LLC
5 Concourse Parkway Suite 3000
Atlanta GA 30328
Ph.: 470.363.4080

| **CLIENT** | **TRADING MANAGER** |
|---|---|
| _____ | Trading Core Investment LLC. |
| _____ | _____ |
| By: , Director | By: Luis Miguel Flores, Director |

## Wire Instructions

Bank name: Bank OZK
Bank address: 17901 Chenal Parkway, Little Rock AR 72223
Beneficiary Name: Trading Core Investment LLC
Account Number: 2804065582
Beneficiary Address: 5 Concourse Parkway Suite 3000, Atlanta GA 30328
Swift Number: OZARUS44
Routing Number: 082907273

# SCHEDULE

**DISCLAIMER**

THE COMPANY MAY INVEST IN FIXED-INCOME SECURITIES OR OTHER CORPORATE ISSUERS INCLUDING FINANCIAL INSTRUMENTS ISSUED BY FINANCIAL INSTITUTIONS OR FINANCIAL SECTOR CORPORATIONS OR SOVEREIGN ISSUERS. FIXED INCOME SECURITIES ARE SUBJECT TO INTEREST RATE, MARKET AND CREDIT RISK. CREDIT RISK RELATES TO THE ABILITY OF THE ISSUER TO MAKE PAYMENTS OF PRINCIPAL AND INTEREST. THE VALUES OF INCOME SECURITIES MAY BE AFFECTED BY CHANGES IN THE CREDIT RATING OR FINANCIAL CONDITION OF THE ISSUING ENTITIES. FIXED INCOME SECURITIES DENOMINATED IN NON-U.S. CURRENCIES ARE ALSO SUBJECT TO THE RISK OF A DECLINE IN THE VALUE OF THE DENOMINATING CURRENCY RELATIVE TO THE U.S. DOLLAR. FINANCIAL INSTRUMENTS AND FIXED INCOME SECURITIES MAY BE SUBJECT TO RESTRICTIONS ON RESALE AND ARE FREQUENTLY ILLIQUID AND ARE NOT ACTIVELY AND WIDELY TRADED.

THE COMPANY'S ASSETS MAY BE INVESTED IN SECURITIES DENOMINATED IN CURRENCIES OTHER THAN IN U.S. DOLLARS. ACCORDINGLY, A PORTION OF THE INCOME AND/OR PROFITS RECEIVED DIRECTLY OR INDIRECTLY BY THE COMPANY MAY BE DENOMINATED IN EURO, BRITISH POUND OR OTHER CURRENCIES. FURTHER, THE COMPANY MAY INCUR COSTS OR GAINS IN CONNECTION WITH CONVERSIONS BETWEEN VARIOUS CURRENCIES.

THERE IS ALWAYS A RISK THAT THE INSTITUTIONS, INCLUDING BROKERAGE FIRMS, EXTERNAL TRADERS AND BANKS, WITH WHICH THE COMPANY WILL DO BUSINESS, OR WITH WHOM SECURITIES OR CASH MAY BE ENTRUSTED FOR CUSTODIAL OR INVESTMENT MANAGEMENT PURPOSES IN MANAGED ACCOUNTS, WILL ENCOUNTER FINANCIAL DIFFICULTIES OR FRAUD THAT MAY RESULT IN MONETARY LOSS AND CONSEQUENT DIFFICULTY IN MEETING THEIR OBLIGATIONS TO THE COMPANY. THE COMPANY MAY MAINTAIN A SUBSTANTIAL PORTION OF ITS ASSETS IN BANK AND BROKERAGE ACCOUNTS PURSUANT TO AGREEMENTS WITH FOREIGN EXTERNAL TRADERS.

# KTG - Keith T. Grumer

| | |
|---|---|
| **From:** | KTG - Keith T. Grumer |
| **Sent:** | Friday, October 29, 2021 12:55 PM |
| **To:** | ed pollus |
| **Cc:** | Winnie Sylvie ANIS; mawoule93@gmail.com; Clark DeMarcus |
| **Subject:** | Removal From Management Pursuant to Joint Venture Agreement |
| **Attachments:** | joint venture.pdf |
| **Importance:** | High |

Mr. Pollus:

Pursuant to Section 1.5 of the attached Joint Venture Agreement, you are immediately removed as manager of the Trading Platform Investment joint venture. Your failure to make each monthly payment and to return the Simon Group's principal is grounds for immediate removal and the Simon Group shall assume all responsibilities.

Demand is here by made for the immediate turnover of all joint venture records, including but not limited to, all communications with the Trading Platform and all financial records. We expect delivery of all documents to my office no later than Monday, November 1, 2021.

Demand is also made for the immediate transfer of the real property pledged to secure the investment to The Simon Group, commonly known as 5160 South University Drive, Davie, FL. To the extent the property does not cover the value of the Simon Group's $250,000.00 investment, demand is hereby made for you to cover the difference.

Please Govern Yourself Accordingly.

Keith Grumer

Keith T. Grumer, Esq.
Partner
Katz Barron

100 N.E. 3rd Ave., Suite 280
Fort Lauderdale, FL  33301
*ktg@katzbarron.com*

Direct:  954-331-2509
Office:  954-522-3636
Cell:    954-303-3000

Eserve: *Miaefile@katzbarron*

This email may contain PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this email, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please immediately notify the sender above by telephone (collect call if necessary) and delete the email from your system.To comply with the requirements of Circular 230, which provides regulations governing certain conduct of U.S. tax lawyers giving written advice with respect to U.S. tax matters, please be aware that any U.S. federal tax advice contained in this communication (including any attachments) is not intended to be used and cannot be used by you or any other person for the purpose of (i) avoiding penalties that may be imposed under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.